call 22 1326 Christian Benico the city of Philadelphia mr. crane how are you sir am I pronouncing your client's name right I'm sorry am I pronouncing your client's name right yes you are thank you thank you judge may it please the court I've reserved two minutes for rebuttal my name is Larry crane and I represent the appellants in this case this case which tests the right of an municipality to selectively punish personal off-duty speech by employees on the issues of admitted public concern where's the selectivity the selectivity is in the basis that we cite to statements by the highest command within the police department that they are not the deputy commissioner right deputy commissioner Patterson who said that we're not concerned about left-leaning post and God help you if we find a post based on a pro-life message all right but the only thing you've appealed is the First Amendment retaliation claim right that is correct so how does that fit into the First Amendment retaliation claim well selectivity it certainly goes to whether or not it's the sole motivating factor on the basis of whether or not they chose I didn't understand you goes to what goes to the question of whether or not in this retaliation case the content of the speech was the sole or at least a motivating factor for the discipline imposed we believe that the proof will go absolutely in fact I don't believe there's much dispute about that isn't the real threshold issue here whether the district court correctly decided this at 12 b6 as opposed to letting it go to discovery absolutely in every case we found and I've been doing this kind of law for quite a while every case that I have run across or tried involved a record at least what about Craig pardon me Craig the Seventh Circuit case with the guidance counselor in the book he wrote you familiar with that case I'm sure I've run across it beyond I don't have a present recollection of the facts of that case decided on a motion 12 b6 because the thoroughness of the pleadings and the attachment of the question document gave the reviewing court all it needed to have before it to determine as a matter of law and it's a legal determination how to evaluate the Pickering inquiry well the problem your honor please is there's no I think it's same situation we back yeah in this case though the court applied a per se disruptive test in other words it just simply said based on the facial content of the material involved we find that that it is per se disruptive well there's that that is not necessarily incorrect is it I mean I I would agree with you that in many cases and maybe even here it would have been cleaner to go the rule 56 route but that's not what we have that's not what the district court did so my question to you is because we are confronted with a complaint that was dismissed at the 12 b6 level and a complaint which explicitly indicated what the statements were by the officers what facts would you produce in response for a Pickering kind of balancing to be conducted what did the district court not have to reach what you believe would have been a correct result well in all the cases and where there is a developed record and there's an opportunity for discovery the issue yeah that was not my question I'm giving you an opportunity to say you know if the district court was wrong and shut you off from that route what would you offer in the course of discovery conducted for purposes summary judgment that we don't have now I would offer evidence to the effect of whether or not there was a significant likelihood of disruption and whether or not that was the reason that the that the city made the decision it made and isn't your plane don't you concede the fact that there is a likelihood of disruption and fault the city for not waiting until there's an actual disruption you rely upon an argument that the city did not wait for an actual disruption but look to the fact that there may be a disruption in your allegations and you argue that's how the court validated the Pickering balancer bear in mind however your honor these posts many of them had been up for many many years as many as six or seven years without the slightest hint of any disruption or likelihood but is that also the fact that the city may be seems to me that's another part of the argument here but I'm more concerned with the violation of the policy the social media policy and the court of conduct policy in in and of itself isn't that enough no it is not why isn't it it is not because it does not take into account the constitutional interest in balancing that must be applied to those policies that's it that's a legal inquiry right it is a legal inquiry discovery gets you but exactly but with the exception of obscenity perhaps there's no body of speech which on its face must be constitutionally determined as as offensive on its face isn't the threshold here the gateway so to speak is the employers reasonable fear of disruption the actual destruction is not really not on the table it's the employers reasonable fear of disruption I like the likelihood right it must be a reasonable suspicion it must be based upon facts reasonable likelihood isn't it well I mean is it isn't that what we said in waters from the employer's perspective can't be based on speculation may it please the court the Supreme Court in Walters has said that I thought your complaint basically concedes those facts which a district court could look at and determine as a matter for all how that weighs out in the pickering balance in terms of the employer's right to take the action it did to enforce its policies versus the employees right to speak on a matter of public concerns they're conceding it's a matter of public concern that's not that's not disputed it's not disputed but in looking at the four corners of the complaint can you say that the the complaint concedes that the city was reasonable in its likelihood or forecast well no you're not going to concede that in the complaint exactly so I submit that these officers who have who have dedicated themselves someone taking a bullet for the city have dedicated themselves to the service of the city are at least entitled to an opportunity to conduct full and reasonable discovery before held to account for a post they made seven eight years ago are all the officers similarly situated all of them with exception of the level of discipline imposed some really really what about officer McGuff didn't the district court actually I don't want to say single him out but in her in her opinion in the analysis actually described officer McGuff's situation as being somewhat different from the others these these individuals are not fungible of course I think page 16 of her opinion the district judge could be deemed to more closely concern matters of public interest the judge did draw nuances between the various plaintiffs with regard to she didn't buy the in other words the city's argument or concession on public concern but got lost but but but I threw that back at you because you suggested that it was only in terms of the discipline imposed with where there were variations and it here the district judge did see some variation in terms of the severity of the actual conduct of posts I agree animus I think and for that reason there shouldn't be a one-size-fits-all for what each plaintiff should in other words all the plaintiffs were of course denied the opportunity for discovery or to present this court with a record what's the record look like what's going to be in that record that the district court needs to rely upon to make a legal ruling that cannot be gleaned from taking the complaint allegations at face value and assuming they're accurate at a minimum in the record there would be depositions of those higher ranking officers within the police department there would be what would they say what is it to be depositions and all that good stuff but what would it add qualitatively to the legal inquiry the district court has to undertake under Pickering and Connick whether indeed there was a reasonable likelihood of disruption or impact upon the public perception of the police department you expect the chain of command at the Philadelphia Police Department take a look at these posts and say this is all good and there's no reasonable likelihood of disruption in light of these posts that's what you would need right that's what we we think we can get is with respect to some of those posts and particularly those on the all of those posts it's a zero-sum game here right well I don't want to speak for the fact that there may be some plaintiffs who would survive that scrutiny they're not similarly situated yeah I don't think so I think that in this case also when presented in a deposition with some of those posts who are which are on the opposite spectrum of the political spectrum and those office those those decision makers policymakers who made the decision to say these are acceptable for what reason well there's a hecklers veto here taking place by the outside public interest group then you do get into a hecklers veto kind of consideration but here you've got a different situation when you look at the nature of the employer the employee in the employment and you factor into that the codes of conduct I think at 6.1 all of the codes of conduct the the the social media policy the city has that I think you'd city has a right to enforce absolutely absolutely I just have a problem it has a right to enforce it what more do they need to enforce it then what's the legislative complaint I'm just saying that that in the enforcement of that policy the factors that need to be taken into account are whether the officers are off-duty whether they're identifying policy says it doesn't matter whether they're on duty or off-duty you act as an ambassador of the department and you maintain an obligation to do that and maintain the respect of it does not exactly these words but basically it's actually maintain the respect for the badge and for the uniform and for the city whether you're on duty or off-duty there are other parts of the policy that say that what you do off-duty does not represent the city of Philadelphia clearly that's there because somebody in the solicitor's office wanted to make sure that you can get your license period or minimize the possibility of it but but they're still ambassadors under the city's policy absolutely but they do not forfeit when they pin on a badge they do not forfeit their First Amendment rights well that's the conclusion I'm not so sure we don't have First Amendment rights when we take the oath of office don't they in fact forfeit some First Amendment rights by virtue of their duty as police officers and what that entails their free speech rights are not co-existent with those of a citizen on a public sidewalk right but that doesn't mean that you can restrain their speaking on issues of national concern solely on the basis of the content or viewpoints expressed and that's what we're saying took place what about this policy six policy directive 610 reads personal use of social media has the potential to impact the department as a whole as well as individual members serving in their official capacity what do we make of that well I make for the fact that there were in seven or eight years where this post were up and there was no impact but again is that the threshold actual or is it the potential as the employer sees it for disruption the problem with the sliding scale of what is potential and what is reasonable is the fact that there must be some factual basis to support that and there must be a fact-intensive inquiry as this court has held into those factors and there has been none in this case and the plants have been deprived of the opportunity to do that well extend prohibits the use of ethnic slurs personal insults material that is quoting material is harassing defamatory fraudulent or content that would otherwise not be acceptable in a city workplace any city workplace right and I would submit that if this speech were to take place in the context of a city workplace it would be a different scape a different evaluation that we're looking at but somehow the the megaphone of social media mitigates that concern or alters that that interest it's it's the I don't in fact there's isn't there greater potential for that megaphone to cause the disruption that the test is concerned about than if it's simply said in the workplace where there would be more control over what is said and over the speaker I think the court should draw a distinction still between speech that in the context of working relationships with their fellow their office well that we get into that in terms of what the impact is good reason to be anticipated be anticipated to have within the workplace given the multi ethnic nature of the city police department but what about article one of the court of conduct conduct unbecoming section 1 section 0 2 1 dash 10 says conduct which allows for discipline is based on quote any incident conduct or course of conduct which indicates an employee has little or no regard for his or her responsibility as a member of the police department you can argue the language as a member of the police department restricts it to while they're on duty but the entire scope of that is clear and when I mentioned earlier the officers duties act as an ambassador for the police department that they they carry an obligation to maintain and uphold the dignity of the police department which is a very high threshold seem to me whether they're wearing the badge in uniform whether they're in plainclothes whether they're at bowling one night after they go home into the long run duty don't think I see I'm out of town I'll answer your honor's question as best I can I think the actions speak far louder louder than their words here they actually did for those many years put sacrificially their lives on the line to act and were honored given medals of honor for their in commendations these officers upheld conduct on the conduct of a police officer and in conduct on becoming is let's let's admit a catch-all when the city doesn't have specific grounds is there a distinction to be made between an officer who posts in hers in his or her posts identifies themselves as a member of the police department and somebody who does it without such a reference there's absolutely I think an important constitutional distinction between the two you have both examples in this case right we do in fact yes we do we've cited cases in which the officers or government employees clearly identified themselves on on their social media and those were consequences that that bore out in the facts could the city be do they have a right to be concerned given the nature of social media that whether or not the poster identifies himself or herself as a police officer or not once it's out there in the in the media social media the neighbors and friends and associates know whether or not it's an identification attached to the post or not they know that that's a police officer that reason to suspect based upon the name so the alternative then is to ban all social media when you when you become a public employee you have no military you can go to your honors Megan Burns I'm here on behalf of the city of Philadelphia actually in this case and we ask that this court affirm the district courts judgment as we've discussed in opening argument here that police officers are held to a higher standard what about the threshold question is treasurer Scrappo framed it with your adversary wouldn't it have been if not more appropriate more helpful to all of us if the district court had taken this the route 50 said the proof 56 the rule 56 route to summary judgment and we had a more fulsome record with respect to each of these 12 I understand your question your honor I don't think it would be helpful I think some of the discussion between your honors up here it would only be marginal I'm not sure what else they would what other facts they would need to show we already have a sufficient argument that he he thinks that the upper echelon of the chain of command would say that there was no potential for disruption given the fact that look these folks have been these six seven-year-old post and there was no disruption in fact some of these folks were recognized and commended for their service what do you make of that argument so your honor I'll talk about the age of the post first and the fact that there was no disruption so to speak between you know some of the years where they posted it and then when it was found out I think that the disruption occurs when the public finds out about these posts and it's disseminated not just you know on a local level but it's disseminated on a national level through several news outlets so I don't think the age is a relevant factor and once you see the posts there the vast majority of them are just as caustic in 2012 when the earliest posts were as they were in 2019 you get into the heckler's veto that mr. Queen is concerned about correct so in in appellants brief they do talk about the heckler's veto and that the pub the perception of the public shouldn't be taken into consideration but I would submit that because police officers are the quintessential public facing entity you do have to consider the views of your audience we rely on the public the Police Department relies on the public's cooperation in order to assist in investigations to have legitimacy when they're out patrolling the streets to keep them safe so I reject that notion that heckler's veto is is relevant here and I would add that this the heckler's veto argument specifically has been rejected in the Monroe case which is a Third Circuit case developed at some judgment after full record correct your honor six there I would submit in our argument is is that there is a sufficient record on this case based off of the undisputed nature of the posts and the fact that there are parts of the complaint as well that talk about the disciplinary process as to several of these officers I I would like to add going back to the heckler's veto that that these are the heckler's veto was squarely rejected also in the Craig case which your honors had discussed earlier and then also Meltzer which is the Nambla case and Bennett which the Nashville metropolitan government it's a case that was litigated by my opposing counsel and the site for that is 977 F 3rd 530 is there a distinction to be made between folks that identify themselves as Philly PD and folks that didn't in these posts in this case your honor I don't think that's a distinction that matters because what actually matters is the fact that the post came to light and each officer was identified as the officer making that post so even though they meant for it to be private there's always a chance when you're posting on the internet internet that these posts will be found and that's exactly what the plain view project did I'd like to go back to the certainly let me just follow up on your answer to that last question by ginger strepo because there certainly is going to be a difference in terms of public reaction right if they know that the is attributed to an officer representing himself or herself as such as opposed to one that's strictly anonymous correct yes and isn't that more than anything what the city's concerned about the city is very concerned which reaction to what a police officer is doing qua police officer I think that's entirely relevant your honor if that's what you're asking me that the fact that people are seeing role of the police officer you know they are outed as a police officer even though they might have used a known to prove anything on their Facebook post I think the public would be very concerned that the fact that their police officers are posting things that advocate violence against the people leave the intention of the speaker if you will is entirely different if they have represented themselves if he or she has represented himself as an officer as a opposed to someone who has posted and relies upon his or her anonymity right correct there's the intention of the poster right I don't think that the actual intent of the poster matters in that sense I think that what the context of the post is you have to read it based on the four corners of the post itself what you put out to the public and what you say there's no there's no unringing that bell you take that risk that when you post something on the Internet people would misunderstand it and misconstrue it and whatever these officers intentions may have been if they were joking using humor that's not that's not exactly what came across here so it may be it may be that a reliance upon anonymity as opposed to an intentional invocation of one's position as a police officer is simply not relevant doesn't matter is that I mean that as I understood Judge Restrepo's question that that's what it was is there a difference does it matter there and and if I'm reading you or understanding you correctly it doesn't it does not matter it does not matter in this specific case because at the end of the day it they were discovered to all be police officers no matter what their intent or their intended anonymity was so that is our position the I'd like to talk about the allegations that the city was selectively pursuing the police officers based off of political viewpoint here there is there's no evidence and there's no there were no facts but that the officers were actually targeted that's what he's wants the opportunity to develop that right but there are no facts based alleged in the complaint that viewpoint discrimination actually occurred I'd like to talk about the comparators that they had put in their amended complaint they they never pled that the police department actually knew about those posts and in fact many of those posts post dated the Plainview project database being published I checked on the internet last time the last time I checked the Plainview project post was in 2019 that was the last time I believe Plainview had updated their their database and then these comparator posts I'm not sure how appellants came across it I'll take them for their word that's that's what you have to do at this stage at the pleading stage but these these posts talk about like kovat 19 themes so it's clear that the majority of these posts post date what was the Plainview project had those comparator posts been in the Plainview project we might be having a different conversation but that's just not before this court and the police department made its decisions based on the database that was the Plainview project alone we the police department when they get complaints and it's a complaint based inquiry so there was no another reason to let it go to discovery no your honor because they simply haven't alleged any facts that actual viewpoint discrimination occurred the police department received these posts they were published nationally caused disruption that's actual disruption as well as potential disruption and and that's what they had in front of them that's how they made their decisions in this case based off the disruptiveness of the Plainview project post whatever Plainview did in order to call the post or what sort of selective bias they may have had is not relevant to what was before the police department and how the police department made its decisions in this case do your honors have any other questions I just looked at the Plainview doctrine website and that you may well be right in terms of when it was last updated I can't get right that's just me speaking it's not it's not in our briefs your honor but just as a matter of my own personal investigation I'd just like to end with you know each officer had a legitimate and obvious basis for their posts a lot of them you know what what is overlooked in this case is that a lot of these posts were violent it's not just run-of-the-mill covert over a lot of there are differences amongst the plaintiffs I don't deny that but each officer definitely had post all officers except for maybe one had post that celebrated violence or even worse celebrated violence at the at the behalf of a police officer so they're not similarly situated they're similarly they all posted something and their posts were not protected each one had a post as a matter of law I understand your position to be that they all posted and all of those posts were demonstrated animus of some kind they don't have to actually specifically invoke violence today no they don't that's just one flavor of a disruptive speech that the city was concerned about in this case and if your honors have no other questions I I will see the rest of my time and rest on my briefs your honor as I perceive the defendant's argument it is that there's an akin to strict liability for anything that one post on there even relying on their anonymity that if you post something on your social media that is susceptible to anyone taking offense then you have violated their conduct policy but it's got to be a reasonable fear reasonable concern about someone taking offense or a reasonable belief that's going to lead to disruption I submit that in today's climate one can take offense at any speech and and it's demonstrated this speech might be able to make the argument better but you seem to be based upon the record before us it's hard to argue that this was just amorphous kinds of stuff that is an everyday conversation and the city was irrational with its concern but the highest and best purpose of the First Amendment and the protection of free speech is regarding controversial speech it's allowing debate on national top but we're in the Pickering universe now we're not in the John Peter Zenger universe I'm sorry we're not the John Peter Zenger universe and this is the Pickering universe it is a Pickering amendment correct but in the Pickering analysis even within that scenario to come back to your honor's earlier question about the hecklers veto this is a case if you look carefully at the setting of this case there was an outside interest group judicial justice injustice watch I think is what it's called that went after officers in eight cities across this country and targeted those just those posts which it found selectively offensive and then publish that in a database now had that not occurred we wouldn't be here today because those posts have been up for as I said many years so is that not the very spirit and meaning of a heckler's veto which this court has said versus right in citing to Craig's discussion of that because until that happened there was no reason for the city to have concern did not know about the violation of the codes of conduct in the social media policy it can't do something about something that it does not know about and this court I think it is the Seventh Circuit Craig case which said that allowing the public with the government's help to shut down unpopular ideas that stir anger is not permitted under the First Amendment and that is precisely Craig you have held the teachers firing was upheld in Craig right and Craig involved I believe a high school district so with unless there are further questions what do you make of Miss Burns's argument with respect to the comparators I'm sorry your honor what do you make of the city's argument with respect to the comparators a compare comparison as between the twelve and and different sorts of speech I think that there are different forms of speech that that are at issue here but there that that does not get to there's not a general prohibitive category of speech that is always on its face going to be found offensive in other words I think the court decided this case in a vacuum and you can't do that under a Pickering analysis it's a fact intensive inquiry and and so to say that certain speech is offensive on its face and therefore will never be protected and under a Pickering analysis is simply not the law it never has been applied that way it was in this case thank you very much thank you very much